Filed 7/23/25  In re J.G. CA4/2

(unmodified opinion attached)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> T. G., <br><br> Defendant and Appellant. | E085564 <br><br> (Super.Ct.No. J296919) <br><br> **ORDER MODIFYING OPINION** <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT

The opinion filed in this matter on July 11, 2025, is modified as follows:

On page 15, following the last paragraph of the disposition, a new paragraph will read:

Upon remand, Father will be notified and reappointed counsel.  The court's ultimate decision regarding ICWA and California implementing provisions must be

1

entered at a noticed hearing where the parents and their counsel are permitted to participate.

This modification does not change the judgment.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS              
J.

We concur:


McKINSTER         
        Acting P. J.


MILLER            
       J.

Filed 7/11/25  In re J.G. CA4/2 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re J.G., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E085564 |
| Plaintiff and Respondent, | (Super.Ct.No. J296919) |
| v. | OPINION |
| T. G., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cara D. Hutson, Judge.  Affirmed in part; conditionally reversed in part.

Sean Angele Burleigh, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Joseph R. Barrell, Deputy County Counsel, for Plaintiff and Respondent.

# I.  INTRODUCTION

T.G. (Father) is the biological father of J.G.  Father appeals from an order terminating his parental rights pursuant to Welfare and Institutions Code[1] section 366.26, as well as an order denying a petition for reinstatement of reunification services pursuant to section 388.  He asserts two claims of error on appeal:  (1) the juvenile court erred when it summarily denied his section 388 petition without an evidentiary hearing; and (2) the order terminating parental rights must be reversed because the San Bernardino County Children and Family Services (CFS) failed to fulfill its inquiry duties under the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) as defined in section 224.2, subdivision (b).

We conclude that the juvenile court did not abuse its discretion in denying Father's section 388 petition without an evidentiary hearing and affirm that order.  However, we conclude that the record is insufficient to show that an adequate ICWA inquiry was conducted in support of the juvenile court's finding that ICWA does not apply.  Thus, we conditionally reverse the order terminating Father's parental rights and remand the matter for further proceedings.

# II.  BACKGROUND

Father and C.Z. (Mother) are the biological parents of J.G.  In 2023, J.G. was detained after reports he had been physically abused by Mother and his stepfather, as well as reports of domestic violence and substance abuse in the home.  Father was

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

incarcerated at the time. CFS filed a petition on J.G.'s behalf pursuant to section 300, alleging that J.G. was at serious risk of physical harm and emotional damage as the result of Mother's direct physical abuse of J.G., substance abuse, untreated mental health issues, domestic violence in the home, and failure to protect J.G. from physical abuse committed by his stepfather. With respect to Father, the petition alleged his inability or failure to protect J.G. despite the fact that he knew or should have known J.G. was at substantial risk of harm.

In January 2024, the juvenile court held a jurisdictional and dispositional hearing; sustained the allegations of the petition;[2] removed J.G. from Mother's and Father's custody; and granted both parents reunification services. With respect to Father, the anticipated reunification services included completion of a domestic violence program, parenting education program, individual therapy, and substance abuse services. Father was also granted visitation with J.G. upon his release from incarceration.

In June 2024, the juvenile court held a review hearing pursuant to section 366.21, subdivisions (e) and (f).[3] According to the status review report, social workers had prepared to refer Father to the reunification services set forth in his case plan upon his release from custody. However, Father was reincarcerated within 48 hours of his release as the result of a probation violation, and remained in custody at the time of the review

---

[2] At CFS's request, the juvenile court dismissed allegations related to the infliction of emotional abuse on J.G. but sustained the remainder of the allegations.

[3] The review hearings were combined as a result of the delay between the time of detention and the dispositional hearing.

hearing. CFS reported that Father had initially participated in phone visits with J.G. but had not participated in such visits for several months as of the time of the hearing. As a result, the juvenile court terminated reunification services and scheduled a hearing pursuant to section 366.26.

In October 2024, CFS filed a section 366.26 report. With respect to Father, CFS reported that he had been released from custody sometime between June 26, 2024 and August 2024. Since his release from custody, Father had participated in two in-person visits with J.G. However, the social worker observed that the contact appeared no more than a friendly visit, since Father had not seen J.G. since J.G. was a baby. As a result, the social worker opined that J.G. did not appear to have a psychological or emotional attachment to Father.

On January 6, 2025, one day before the scheduled section 366.26 hearing,[4] Father filed a petition pursuant to section 388. Father requested that J.G. be transitioned to his custody with increased visitation or, alternatively, that the juvenile court reinstate reunification services. With respect to changed circumstances, Father alleged that: (1) he was no longer incarcerated; (2) he had completed one parenting class while incarcerated; (3) he was "working on getting enrolled in a substance abuse class"; (4) he "plan[ned] on enrolling in college or a trade program soon"; and (5) he has had one good visit with J.G. Father also expressed changes in his general philosophy with respect to

---

[4] Father's counsel declared a conflict shortly after CFS filed its section 366.26 report. As a result, the juvenile court was required to appoint new counsel, and the section 366.26 hearing was continued to January 2025.

4

parenting and life.  Additionally, he attached a computer printout showing he had also completed an anger management class while incarcerated.  With respect to J.G.'s best interests, Father alleged that (1) "[i]t would be better because my son needs to be with his biological parents"; (2) he had always maintained a positive and supportive relationship with J.G.; (3) he had maintained regular phone contact with J.G.; and (4) J.G. would benefit from maintaining relationships with his extended paternal family members.  The juvenile court summarily denied the petition without a hearing.

On January 7, 2025, the juvenile court held a contested section 366.26 hearing.  At the hearing, Father requested the juvenile court reconsider his section 388 petition, and the juvenile court permitted the parties to argue the matter.  Father's counsel conceded that, as of the time of the hearing, Father had yet to complete all of the services originally set forth in his case plan but argued that Father had not had sufficient time to do so as a result of his incarceration.  In response to an inquiry by the juvenile court, counsel for CFS opined that it was unlikely J.G. would be reunified with Father even if Father were granted additional reunification services.  The juvenile court denied the petition and, after receiving evidence and argument in a contested section 366.26 hearing, terminated parental rights.

Father appeals from the order denying his section 388 petition and from the order terminating his parental rights.

### III.  DISCUSSION

In this appeal, Father asserts two claims of error:  (1) the juvenile court abused its discretion when it denied his section 388 petition without an evidentiary hearing; and (2)

5

the juvenile court's finding that ICWA does not apply is not supported by substantial evidence. For the reasons set forth below, we affirm the order denying Father's section 388 petition but conditionally reverse the order terminating Father's parental rights to permit CFS and the juvenile court to conduct further inquiry related to J.G.'s potential status as an Indian child.

A. *Section 388 Petition*

    1. <u>General Legal Principles and Standard of Review</u>

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' " (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; § 388, subd. (a).) "The juvenile court has discretion whether to provide a hearing on a petition alleging changed circumstances." (*In re Aljamie D.* (2000) 84 Cal.App.4th 424, 431.) However, a " ' "parent need only make a prima facie showing to trigger the right to proceed by way of a full hearing." ' " (*Id.* at p. 432.) "If the liberally construed allegations of the petition do not show changed circumstances such that the child's best interests will be promoted by the proposed change of order, the dependency court need not order a hearing." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250; Cal. Rules of Court, rule 5.570(d)(1).)

"We normally review the grant or denial of a section 388 petition for an abuse of discretion." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.) This includes the juvenile

court's summary denial of a section 388 petition without a hearing. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.)

2. Application

Here, Father's petition alleged that circumstances had changed warranting reinstatement of reunification services because he had been released from custody, had completed some classes while incarcerated, was in the process of attempting to enroll in additional programs to help address issues identified in his initial reunification case plan, and had generally changed his philosophy on parenting and life. However, Father's initial reunification case plan contemplated completion of a domestic violence program, parenting education program, individual therapy, and substance abuse services. And even at the time Father brought his petition, Father's counsel conceded that Father had yet to complete significant portions of his case plan.[5] Under these circumstances, the juvenile court could reasonably conclude that the petition did not show a sufficient change in circumstances warranting modification of the prior order terminating reunification services.

It is true, as Father argues in reply, that the statute does not require a parent to show a complete resolution of all issues in order show the threshold changed circumstances necessary to trigger an evidentiary hearing on a section 388 petition.

---

[5] Even without this concession, some of the changed circumstances alleged in the petition constituted only expressions of Father's intent to address certain issues in the future, stating only that Father was "working on getting enrolled" in a substance abuse program; he had only just started his first therapy session; and that Father "plan[ned] to" take courses to address his employment prospects.

7

However, as this court has explained, " '[n]ot every change in circumstance can justify modification of a prior order,' " and "[t]he change in circumstances supporting a section 388 petition must be material." (*In re N.F.* (2021) 68 Cal.App.5th 112, 120-121; see *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["To support a section 388 petition, the change in circumstances must be substantial."].) Where facts that show merely " 'changing,' " but not yet " 'changed,' " circumstances, they may not be sufficiently material to support a modification order under section 388. (*In re N.F.*, at p. 121, fn. 3; *In re Carl R.* (2005) 128 Cal.App.4th 1051, 1072 [showing only that "the circumstances were changing" is "insufficient to warrant a hearing on a section 388 modification petition"].)

Here, Father's completion of parenting and anger management courses during his incarceration as well as release from custody certainly suggests that circumstances might be changing. However, the record also shows that Father had been released from custody for nearly six months before bringing his section 388 petition seeking reinstatement of reunification services on the eve of the section 366.26 hearing. And Father's petition alleged very few concrete steps that had been taken during that time. The juvenile court could reasonably conclude that the steps taken during and up to the time of Father's release from custody were not sufficiently significant or material to constitute changed circumstances in light of this intervening period. On this record, we find no abuse of discretion in the juvenile court's decision to deny Father's section 388 petition without an evidentiary hearing on the ground that the allegations of the petition, even if accepted as

8

true, did not show sufficiently changed circumstances warranting modification of the prior order terminating reunification services.

While the juvenile court never reached the issue,[6] we also briefly observe that, even if Father had shown changed circumstances warranting modification of the juvenile court's visitation order, the allegations of his petition, even if accepted as true, did not sufficiently address how reinstatement of reunification services at this point in the dependency proceedings would be in J.G.'s best interest. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1157 ["[T]he parent must sufficiently allege *both* a change in circumstances or new evidence *and* the promotion of the child's best interests," and "[a] prima facie case is made if the allegations demonstrate that these two elements are supported by probable cause."]; *In re Justice P.* (2004) 123 Cal.App.4th 181, 191 ["[S]ection 388 contemplates that a petitioner make a prima facie showing of both elements to trigger an evidentiary hearing on the petition."]; Cal. Rules of Court, rule 5.570(d)(1) [A juvenile court may deny a petition under section 388, subdivision (a) ex

---

[6] Because the juvenile court denied the petition without making any findings related to the best interests of J.G., we need not address Father's argument that the juvenile court abused its discretion by purportedly relying on an opinion expressed by CFS's counsel during argument regarding the likelihood of reunification in the future. Even assuming reliance on county counsel's argument would have been error, the likelihood of reunification is relevant to the issue of whether a modification would be in J.G.'s best interest. (See *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1273 [Generally, if reunification is not possible, then "offering reunification services that are destined to fail is not in the child's best interest."].) And, because the juvenile court ultimately denied the petition solely based upon the failure to establish a material change in circumstances, Father could not have been prejudiced by any alleged error such that reversal would be required. (See *In re J.P.* (2017) 15 Cal.App.5th 789, 799-800 [Error related to consideration of a § 388 petition is subject to harmless error analysis.].)

parte if the petition "fails to state a change of circumstance or new evidence that may require a change of order . . . or fails to show that the requested modification would promote the best interest of the child . . . ."].)

By the time Father brought his section 388 petition, reunification services had already been terminated for approximately six months. And "[o]nce reunification services are terminated . . . , the focus of the proceedings changes from family reunification to the child's interest in permanence and stability," and this becomes the focus of any best interest analysis in a section 388 petition. (*In re G.B.*, *supra*, 227 Cal.App.4th at p. 1163; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317 ["After the termination of reunification services," the " 'focus shifts to the needs of the child for permanency and stability . . . .' "].)[7]

With respect to J.G.'s best interest, Father's petition alleged that he had an emotional bond with J.G. and, as a result, J.G. "needs to be with his biological parents";

---

[7] Father urges that any best interest analysis must be conducted applying the factors set forth in *In re Kimberly F.* (1997) 56 Cal.App.4th 519, which include the seriousness of the problem leading to dependency, the reason that problem was not overcome, the strength of relative bonds between the dependent child and both parent and caretaker, the degree to which the problem may be easily removed or ameliorated, and the degree to which the problem has actually been ameliorated. We question the continued vitality of *Kimberly F.* as the same court that issued that decision has since recognized that its analysis " 'fails to give full consideration to [the] shift in focus' " mandated by our Supreme Court in *Stephanie M.* (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.) Regardless, we observe that Father's petition never actually addressed the *Kimberly F.* factors in support of its best interest allegations. Notably, Father did not allege that the problems leading to dependency were minor, did not assert that those problems had been overcome, did not allege that the strength of his bond with J.G. was greater than J.G.'s bond with caretakers, and did not allege that the remaining issues to be addressed in reunification were ones that could easily be remediated. Thus, even under *Kimberly F.*, the petition did not state a sufficient prima facie showing of best interests.

"would . . . be able to have relationships with our extended family"; and "deserves to have [Father] and [Father's] extended family in his life." In other words, Father's allegations related to J.G.'s best interest focused entirely on the benefit of potential family reunification. In our view, such allegations, even if accepted as true, were simply not enough to show that J.G.'s best interests would be served by reinstating reunification services on the eve of a section 366.26 hearing. Our Supreme Court made clear in *In re Stephanie M.* that there is a substantive shift in focus away from family reunification and toward the need for permanency and stability when conducting a best interest analysis after the termination of reunification services. (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 317.) This analysis would have no meaning if merely asserting a potential for family reunification was itself sufficient to constitute a showing that the child's permanency and stability would be promoted by the modification of a prior order, as Father now claims on appeal.

Here, other than the assertion that J.G. might benefit from a potential future family reunification, there were no allegations to explain how reinstatement of reunification would result in greater permanency or stability for J.G. at this late stage of the proceedings and no allegations that J.G. would suffer any type of detriment if the dependency proceedings continued in the normal course. Thus, even accepting the allegations of Father's petition as true, the petition did not state a prima facie case that reinstatement of reunification services would be in J.G.'s best interest, and it was not an abuse of discretion for the juvenile court to deny the petition without conducting an evidentiary hearing.

11

B. *ICWA*

Father also contends that the order terminating parental rights must be conditionally reversed because CFS failed to comply with its duties under the ICWA. For the reasons set forth below, we agree.

1. General Legal Principles and Standard of Review

Generally, "Congress enacted ICWA . . . to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement . . . . ICWA established minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)  And section 224.2 creates three distinct duties regarding ICWA in dependency proceedings:  (1) a duty of initial inquiry to ask all involved persons whether a dependent child may be an Indian child; (2) a duty to make further inquiries if the initial duty discloses a reason t believe the dependent child may be an Indian child; and (3) a duty to provide formal notice to tribal entities when any inquiry results in a reason to know a dependent child is an Indian child.  (*In re D.S.*, at p. 1052; § 224.2)

Following the inquiry stages, the juvenile court may make a finding that ICWA does not apply because the department's inquiry and due diligence was " 'proper and adequate' but no 'reason to know' whether the child is an Indian child was discovered." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.)  Our Supreme Court has recently said that "a juvenile court's fact-specific determination that an [ICWA] inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to

12

deferential standard of review." (*In re Dezi C.* (2024) 16 Cal. 5th 1112, 1141.) Therefore, we review the juvenile court's determination that the ICWA inquiry in this case was adequate for abuse of discretion.

2. Application

Here, during the inquiry stages, J.G.'s paternal grandparents expressed the belief they had native American ancestry associated with specific tribal entities, including the "Blackfoot" and "Cherokee" tribes. The parties agree that these statements triggered a duty of further inquiry under section 224.2. And, CFS concedes, and we agree, that the record does not contain sufficient evidence to support the conclusion that its inquiry was reasonable or adequate—at least with respect to J.G.'s potential affiliation with one of the tribal entities identified by paternal grandparents.

Error resulting in an inadequate ICWA inquiry "requires conditional reversal with directions for the child welfare agency to comply with the inquiry requirement of section 224.2, document its inquiry in compliance . . . , and when necessary, comply with the notice provision of section 224.3." (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1136; *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1102 ["[W]here the parties do not dispute that the ICWA inquiry was inadequate, [a juvenile court's finding] cannot stand."].)

Because any error resulting in an inadequate ICWA inquiry requires conditional reversal, it is unnecessary for us to address CFS's argument that its inquiry with respect to at least one of the tribal entities should be considered sufficient with respect to that entity. With respect to the adequacy of CFS's inquiry, section 224.2 contemplates only that the juvenile court make an ultimate finding regarding whether ICWA applies to the

13

proceeding—not specific findings related to each tribal entity. (§ 224.2, subd. (i)(2).) And because the juvenile court's duty with respect to ensuring ICWA compliance is a continuing duty (*In re Isaiah W.* (2016) 1 Cal.5th 1, 10), it is required to reassess the adequacy of any inquiry efforts whenever it receives new information bearing on the issue (§ 224.2, subd. (i)(2)).

We do not know what additional information might be disclosed upon reasonable further inquiry or whether that information might require reasonable steps to further investigate J.G.'s possible affiliation with both identified tribal entities or even tribal entities that have yet to be disclosed. Thus, it is unnecessary to opine on the adequacy of efforts with respect to only one specific tribal entity where reversal for further inquiry is already required. Regardless of our view on the matter, the juvenile court is required to hold a new hearing upon remand to consider the ultimate issue of whether ICWA applies after considering the totality of the circumstances at the time of the hearing and determining whether any additional inquiry efforts by CFS have resulted in a "proper, adequate, and duly diligent" inquiry in compliance with section 224.2. (*In re Dezi C.*, *supra*, 16 Cal.5th at p. 1137.)

## IV. DISPOSITION

The order denying Father's section 388 petition is affirmed. The order terminating parental rights is conditionally reversed and remanded to the juvenile court for compliance with the inquiry and notice requirements of sections 224.2 and 224.3 and the documentation provisions of Rules of Court, rule 5.481(a)(5). If the juvenile court thereafter finds that a proper and adequate further inquiry and due diligence have been

14

conducted, and concludes ICWA does not apply, then the juvenile court shall reinstate the order terminating parental rights. If, instead, the juvenile court concludes ICWA applies, then it shall proceed in conformity with ICWA and California implementing provisions. (See 25 U.S.C. §§1 912, subd. (a); 224.2, subd. (i)(1); 224.3; & 224.4.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS
J.

We concur:


McKINSTER
    Acting P. J.


MILLER
     J.

15